ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| PEDRO ZENÓN ENCARNACIÓN<br><br>Apelante<br><br>v.<br><br>ROYAL GRASS, INC.; ÁNGEL JAVIER CARRILLO SANTIAGO; JJJ CANN, LLC; JULIO C. VERGARA MORGES<br><br>Apelado | KLAN202400224 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2023CV02388<br><br>Sobre: Rescisión de Contrato |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece Pedro Zenón Encarnación (en adelante, Pedro Zenón o apelante) mediante *Apelación* para solicitarnos la revisión de la *Sentencia* emitida y notificada el 3 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI o foro primario).[1] Mediante la *Sentencia* apelada, el foro primario desestimó el presente pleito por falta de legitimación activa.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

Los hechos que dan origen a esta controversia surgen cuando el 27 de julio de 2023, Pedro Zenón presentó una *Demanda* sobre recisión de contrato contra Royal Grass, Inc., Ángel Carrillo Santiago (en adelante, señor Carrillo Santiago), JJJ Cann, LLC (en adelante, JJJ Cann) y Julio Vergara Morges (en adelante, señor Vergara

---

[1] Apéndice del Recurso, a las págs. 228-232.

Número Identificador

SEN2024_____

Morges).[2] En esta se desprende que, durante el año 2018, Cacimar Zenón Encarnación (en adelante, Cacimar Zenón), quien es hermano de Pedro Zenón, acordó con Ángel Luis Carrillo Ramos (en adelante, señor Carrillo Ramos) asociarse para iniciar los trámites de solicitud de una licencia ante la Junta Reglamentadora de Cannabis Medicinal (en adelante, Junta), con el propósito de establecer un dispensario de cannabis medicinal. Estos acordaron aportar el capital necesario para cubrir los gastos de la gestión relacionada con la licencia y la preparación del local comercial una vez obtuvieran la precualificación de la Junta. Además, le comisionaron al señor Carrillo Santiago, hijo del señor Carrillo Ramos, realizar las diligencias necesarias para la obtención de la licencia, por medio de Royal Grass, Inc. (en adelante, Royal Grass o la corporación), persona jurídica incorporada por el señor Carrillo Santiago para dicho propósito.

Asimismo, surge de la *Demanda* que Royal Grass, por conducto del señor Carrillo Santiago, presentó la correspondiente solicitud ante la Junta para obtener la licencia que autorizaría el establecimiento de un dispensario de cannabis medicinal. Así pues, la Junta concedió una preaprobación e inmediatamente comenzaron los preparativos para habilitar un local comercial. Por otro lado, Pedro Zenón sostuvo en su reclamación que, en enero de 2020, el señor Carrillo Ramos le transfirió todas las participaciones que este poseía de Royal Grass al apelante. También adujo que, el 4 de marzo de 2020, Cacimar Zenón relevó de todas las funciones al señor Carrillo Santiago de Royal Grass y le solicitó la entrega de todos los archivos relacionados a la corporación.

Como consecuencia de esto último, Cacimar Zenón presentó una demanda contra el señor Carrillo Santiago y Royal Grass, en la

---

[2] *Id.*, a las págs. 228-232.

cual argumentó, entre otras cosas, que el señor Carrillo Santiago le estaba impidiendo la operación del dispensario, lo que estaba ocasionando pérdidas económicas.[3] Asimismo, en esa demanda, le solicitó al TPI que lo declararan único accionista de la corporación. Dicho caso continúo con su trámite ordinario hasta llegar a la etapa de juicio. En dicha vista, el señor Carrillo Santiago manifestó que existían otros socios y accionistas que estaban involucrados en la operación de Royal Grass. Esto repercutió en que el TPI le ordenara al señor Carrillo Santiago la entrega de ciertos documentos para determinar si en ese pleito existían otras partes indispensables. Así las cosas, el señor Carrillo Santiago entregó los documentos requeridos y de ahí surgió que Julio Vergara Sánchez adquirió acciones de la corporación y, que posteriormente las vendió.

Subsiguientemente, conforme se desprende de la demanda que da origen a este caso, Cacimar Zenón realizó una investigación y descubrió que existía una entidad que alegaba ser dueña y administradora del dispensario Royal Grass. Dicha entidad tenía el nombre comercial de *Hunters*, el cual era utilizado por JJJ Cann. Igualmente, surgió que el agente residente de esta corporación era el señor Vergara Morges quien era padre de Julio Vergara Sánchez, la persona que había adquirido acciones de Royal Grass en el pasado, pero que presuntamente las vendió. Ante ello, Cacimar Zenón acudió a las oficinas de la Junta y descubrió que el 13 de febrero de 2023, el señor Carrillo Santiago había acudido a esta entidad e informó que este autorizó el traspaso de la licencia del dispensario Royal Grass a JJJ Cann y al señor Vergara Morges. Posteriormente, la Junta aprobó este cambio de dueño.

Ante esto, Cacimar Zenón traspasó todos sus derechos a Pedro Zenón mediante un *Contrato de Cesión de Acciones y Créditos*

---

[3] Dicho pleito está identificado con el alfanumérico CA2020CV01020.

*Litigiosas.* El apelante sostuvo que, con la cesión de la licencia del dispensario, el señor Carrillo Santiago, excluyó del patrimonio de Royal Grass todos sus bienes y, por ende, produjo su insolvencia. De igual manera, alegó que la cesión de la licencia del dispensario se otorgó con la intención de menoscabar la acción del apelante como acreedor, cometiéndose así un acto fraudulento, cuyo único propósito era evadir cumplir con la sentencia que se dictase en su día, en el pleito CA2020CV01020, el cual estaba pendiente de adjudicación. Por ello, solicitó que se rescindiera el negocio jurídico mediante el cual Royal Grass cedió todos sus derechos y obligaciones sobre la licencia para operar el dispensario de cannabis medicinal a JJJ Cann y al señor Vergara Morges.

Por su parte, el 23 de octubre de 2023, el señor Vergara Morges presentó una *Moción de Desestimación.*[4] En esencia, planteó que Pedro Zenón no era accionista de Royal Grass y de tener alguna participación en la corporación, esta dependería de la determinación que hiciera el TPI en la controversia en la cual se estaba cuestionando si su hermano Cacimar Zenón era o no accionista.

Por su parte, el 1 de noviembre de 2023, JJJ Cann, compareció al pleito mediante una *Moción Solicitando Desestimación.*[5] En esta, esbozó que el apelante carecía de legitimación activa, esencialmente ya que este nunca advino accionista de la corporación, toda vez que su alegado cedente nunca adquirió acciones de Royal Grass por parte del señor Carrillo Ramos, y, además, la presunta cesión de las acciones a Cacimar Zenón fue nula por ser una ilegal de "blanqueo" y "lavado de dinero" producto de la venta ilícita de drogas.

En respuesta a estas dos (2) mociones dispositivas, el 6 de noviembre de 2023, el apelante presentó dos (2) mociones distintas

---

[4] Apéndice del Recurso, a las págs. 7-21.
[5] *Id.,* a las págs. 22-70.

intituladas *Oposición a Moción de Desestimación*.[6] En resumen, el apelante sostuvo en ambas que, dando por ciertos los hechos bien alegados en la demanda que origina este pleito, se debía concluir que en este caso existía un reclamo que justificaba la concesión de un remedio. Por su lado, el 27 de noviembre de 2023, el señor Vergara Morges presentó una *Réplica a Oposición a Moción de Desestimación*.[7] En esta, resaltó la particularidad de que Cacimar Zenón había hecho alegación de culpabilidad formal en un caso criminal ante el foro federal por delitos de narcotráfico y que ello, por sí solo, tenía el efecto de perder cualquier tipo de derecho que tuviese sobre una licencia de cannabis conforme al derecho aplicable.

Por su parte, JJJ Cann, presentó una *Réplica a Oposición a de Desestimación por Falta de Jurisdicción (Anot. Num. 33)*,[8] el 7 de diciembre de 2023. En esencia, planteó que la causa de acción del demandante en la que solicitaba la rescisión de la cesión de la licencia para operar el dispensario de cannabis medicinal acordada entre Royal Grass y JJJ Cann era necesariamente una acción derivativa y no podía ser una acción de rescisión de un acreedor. Indicó que esto último obedeció a que el apelante reclamaba ser un accionista y no un acreedor de Royal Grass y, además, este no tenía un crédito líquido y exigible en contra de la corporación.

Evaluada las posturas de las partes, el 3 de enero de 2024, el TPI emitió y notificó su *Sentencia*.[9] Mediante esta, el foro primario declaró Ha lugar las solicitudes de desestimación incoadas por la parte apelada y, consecuentemente, ordenó la desestimación del presente pleito. En particular, el foro primario razonó que:

> Sin entrar en otras consideraciones que están o pudieran estar en controversia en el caso CA2020CV01020, se determina que el demandante

---

[6] *Id.*, a las págs. 71-92.
[7] *Id.*, a las págs. 96-112.
[8] *Id.*, a las págs. 113-227.
[9] *Id.*, a las págs. 228-232.

Pedro Zenón Encarnación no ostenta legitimación activa para incoar la Demanda en epígrafe, ya que la acción incoada, como mínimo, está basada en unos hechos que a la fecha son indeterminados y supeditados a la adjudicación del caso CA2020CV01020, cuyo demandante es Cacimar Zenón Encarnación y no Pedro Zenón Encarnación. En el caso CA2020CV01020, permanece la acción incoada por el Sr. Cacimar Zenón Encarnación para que el Tribunal adjudique si este es o no el único dueño y accionista de Royal Grass Inc. La Demanda aquí presentada está sustentada **únicamente** en un alegado *Contrato de Cesión de Acciones* y Créditos Litigiosos suscrito el 3 de julio de 2023 por los hermanos Zenón Encarnación, el cual, por cierto, no se consideró suficiente en el caso CA2020CV01020 para autorizar la sustitución de parte solicitada por el Sr. Cacimar Zenón Encarnación para que figurara el Sr. Pedro Zenón Encarnación como parte demandante. En consecuencia, es forzoso concluir que este último no tiene autoridad para incoar la presente Demanda.[10]

En desacuerdo, el 17 de enero de 2024, el apelante presentó una *Moción en Solicitud de Reconsideración*.[11] En esta, insistió en su planteamiento de que tomando como ciertas las alegaciones bien hechas no procedía la desestimación del pleito. El 6 de febrero de 2024, el señor Vergara Morges presentó una *Oposición a Reconsideración*[12] y por su parte, JJJ Cann presentó una *Oposición a "Moción en Solicitud de Reconsideración (Anot. Num. 49).*[13] En síntesis, estas dos (2) partes reiteraron su postura en cuanto a la falta de legitimación activa por parte del apelante. Evaluado estos escritos, el 8 de febrero de 2024, el TPI emitió una *Resolución* en la cual declaró No ha Lugar la reconsideración del apelante.[14]

Inconforme aun, el 6 de marzo de 2024, compareció el apelante mediante un recurso de *Apelación* en el cual esgrimió la comisión del siguiente error por parte del foro primario:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR FALTA DE LEGITIMACIÓN ACTIVA.

---

[10] *Id.*, a las págs. 231-232.
[11] *Id.*, a las págs. 233-246.
[12] *Id.*, a las págs. 247-251.
[13] *Id.*, a las págs. 252-261.
[14] *Id.*, a la pág. 262.

Mediante *Resolución* emitida el 7 de marzo de 2024, este Tribunal concedió al apelante hasta el 14 de marzo de 2024, para acreditar el cumplimiento con la Regla 13(B) y R. 14(B).[15] De igual forma, concedimos a la parte apelada hasta el 5 de abril de 2024, para presentar su alegato en oposición.

El 2 de abril de 2024, el Sr. Julio Vergara Morges presentó su *Alegato en Oposición a Apelación.* Posteriormente, JJJ Cann solicitó una prórroga el 2 de abril de 2024 y la declaramos Ha Lugar. No obstante, el 11 de abril de 2024, JJJ Cann solicitó una prórroga adicional, por lo que esta Curia concedió a JJJ Cann un término final e improrrogable para presentar su oposición al recurso. Conforme ordenado, el 17 de abril de 2024, JJJ Cann presentó de su *Alegato en Oposición.* Por su parte, Royal Grass y el Sr. Ángel Carrillo Santiago no presentaron su oposición al recurso. Por tanto, habiendo decursado el término concedido a Royal Grass y el Sr. Ángel Carrillo Santiago para cumplir con lo ordenado sin haberlo hecho, procederemos a resolver sin el beneficio de su comparecencia.

II

**A. Apelación Civil**

La Regla 52.2 (a) de las Reglas de Procedimiento Civil,[16] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[17] La correcta notificación de una sentencia es una característica imprescindible del debido proceso

---

[15] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).
[16] 32 LPRA Ap. V, R. 52.2 (a).
[17] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE,* 145 DPR 122, 131 (1998).

judicial.[18] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
> […]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[19] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[20] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. Regla 10.2 de las Reglas de Procedimiento Civil

La Regla 10.2 de las Reglas de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[21] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado en la que solicita que se desestime la demanda presentada en su contra, aun sin necesidad de formular una alegación previa.[22]

La regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.[23]

---

[18] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[19] 32 LPRA Ap. V, R. 47.
[20] *Id.*
[21] 32 LPRA Ap. V, R. 10.2.
[22] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).
[23] 32 LPRA Ap. V, R. 10.2.

El tribunal interpretará las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible a la parte demandante para determinar si la misma es suficiente para constituir una reclamación válida.[24] No obstante, procederá la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio.[25]

Por su parte, los tribunales deben evaluar el posible impacto que éste pueda tener sobre los intereses públicos involucrados; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicio de los derechos de terceros.[26]

### C. Principio de Justiciabilidad y la Legitimación Activa

El principio de la justiciabilidad recoge una serie de doctrinas de autolimitación basadas en consideraciones prudenciales que prohíben al foro judicial emitir opiniones consultivas. Este principio fue incorporado jurisprudencialmente a nuestro ordenamiento jurídico mediante el caso de *ELA v. Aguayo*.[27] **La doctrina de justiciabilidad persigue evitar emitir decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia.**(Énfasis nuestro.)[28] En ese contexto, un asunto no es justiciable cuando (i) se trata de resolver una cuestión política; (ii) **una de las partes carece de legitimación activa para promover un pleito**; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv)

---

[24] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[25] *González Méndez v. Acción Social et al.*, 196 DPR 213, 235 (2016).
[26] *AMPR v. Srio. Educacion, E.L.A., supra*, a la pág. 268.
[27] 80 DPR 552, 595 (1958). R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Ed. Pubs. JTS, 1987, a la pág. 147.
[28] *Moreno Orama v. UPR*, 178 DPR 969, 973 (2010).

las partes pretenden obtener una opinión consultiva o, (v) cuando se pretende promover un pleito que no está maduro. [29]

En cuanto, al concepto de legitimación activa, esta ha sido definida por nuestra más Alta Curia como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante".[30] En ese sentido, "el examen de la legitimación activa es un mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado".[31]

Por ello, esta doctrina requiere que la parte que solicite un remedio judicial deba demostrar estos cuatro elementos: (i) ha sufrido un daño claro y palpable; (ii) el daño es real, inmediato y preciso, no abstracto o hipotético; (iii) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (iv) la causa de acción surge al palio de la Constitución o de una ley.[32]

### D. Desestimación al amparo de la Regla 39.2 (c) de las Reglas de Procedimiento Civil

La desestimación es uno de los medios que el Tribunal tiene para dar por concluido un proceso sin dirimir los méritos de este. La Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, rige el proceso de desestimación de las demandas presentadas en el Tribunal de Primera Instancia. Dicha regla establece que el Tribunal puede, a iniciativa propia o por solicitud del demandado, decretar la

---

[29] *Crespo v. Cintrón*, 159 DPR 290, 298 (2003); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Noriega v. Hernández Colón*, 135 DPR 406, 421–22 (1994); *ELA v. Aguayo, supra*, en la pág. 584.

[30] *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019) citando a *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2019)

[31] *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 739 (2022).

[32] *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 572 (2010).

desestimación del pleito. En lo pertinente, la referida regla, en su inciso c, dispone que:

> A menos que el Tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 de este apéndice y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.[33]

### III

En el presente caso, la parte apelante nos solicita la revisión de una *Sentencia* que el TPI emitió y notificó el 3 de enero de 2024. En específico, nos plantea como único señalamiento de error que el foro primario incidió en desestimar su causa de acción por falta de legitimación activa. No le asiste la razón. Veamos.

En su recurso, el apelante sostiene que el TPI debió atender las mociones de desestimación instadas por el señor Vergara Morges y JJJ Cann conforme lo exige nuestro ordenamiento jurídico. Concretamente, argumenta que el foro primario debió dar por ciertos todos los hechos bien alegados y, de la misma forma, las alegaciones de la demanda debieron ser interpretadas en conjunto, liberalmente y de la manera más favorable a la parte demandante, entiéndase, Pedro Zenón. Si bien es cierto que lo antes descrito es el estándar por seguir a la hora de evaluar la procedencia de una moción de desestimación, ello no significa que este análisis se pueda anteponer a los requisitos de autolimitación judicial que exige nuestra constitución.

En su *Sentencia*, el foro primario realizó un resumen del tracto procesal de este pleito y destacó la existencia de una controversia paralela en el caso con la denominación alfanumérica CA2020CV01020, la cual está pendiente de adjudicación. El TPI explicó que en dicho caso estaba en controversia si Cacimar Zenón

---

[33] 32 LPRA Ap. V, R. 39.2 (c).

era o no el único dueño y accionista de Royal Grass. Es decir, al momento de la presentación de la *Demanda* del título, no se había dirimido en el alfanumérico CA2020CV01020, si en efecto Cacimar Zenón, quien fue la persona que le cedió las acciones al apelante, era en efecto accionista de la corporación.

La incertidumbre antes descrita afecta sustancialmente la procedencia de la causa de acción instada por el apelante en el caso del título. Ello, responde a que la condición de accionista de Royal Grass es lo que le brinda legitimación activa para poder reclamar una recisión del contrato de cesión de la licencia del dispensario que presuntamente se concretizó por la parte apelante. Al cuestionarse la tenencia de las acciones de Cacimar Zenón, persona que le cedió las acciones al apelante en un pleito activo pendiente de adjudicación, nos vemos imposibilitados de llegar a una conclusión distinta a la que llegó el TPI en su dictamen. El presente caso contiene una controversia la cual no está definida concretamente para que el foro judicial pueda evaluarla en sus méritos.[34] En ese sentido, la controversia sustantiva de este pleito no es apropiada para una resolución judicial, pues el daño no es suficiente para requerir una adjudicación judicial, toda vez persisten unas circunstancias esenciales que están supeditadas a la resolución del pleito en el alfanumérico CA2020CV01020.

En conclusión, colegimos que el señalamiento de error formulado por el apelante no se cometió, puesto que la controversia de marras no es una justiciable ya que el apelante carece de legitimación activa para promover el pleito. Es por todo lo anterior que disponemos que el error esgrimido no fue cometido.

---

[34] *Clases A, B y C v. PRTC,* 183 DPR 666, 692 (2011) citando a *Crespo Claudio v. O.E.G.,* 173 DPR 804, 814 (2008).

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones